**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

v. Criminal Case No: 1:13cr35

NATHAN SCOTT,
         Defendant.

## OPINION/ ORDER CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Nathan Scott, in person and by counsel, Scott Radman, appeared before me on May 6, 2013. The Government appeared by Zelda Wesley, its Assistant United States Attorney.

Thereupon, the Court proceeded with the Rule 11 proceeding by placing Defendant under oath. The Court determined that Defendant intended to enter a plea of "Guilty" to a One-Count Information. As part of Defendant's Initial Appearance on the Information, the undersigned reviewed with him the One-Count Information, charging him with possession with intent to distribute cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). The undersigned also reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in the One-Count Information, including imprisonment for a term of not more than twenty (20) years; a fine of not more than $1,000,000; and at least three (3) years of supervised release.

The Court then determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The AUSA then summarized the agreement. During her summarization, the AUSA noted a typographical error in paragraph 10 denoting the Defendant was pleading to an Indictment instead of an Information. She amended the written agreement and

initialed it, as did Defendant and his counsel. Defendant then stated that the Government's summary of the Plea Agreement was correct. The Court **ORDERED** the written Plea Agreement filed.

Thereupon, the Court inquired of Defendant concerning his understanding of his right to have an Article III Judge hear and accept the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before the United States Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Nathan Scott, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent filed.

The undersigned Magistrate Judge inquired of Defendant and his counsel relative to Defendant's knowledge and understanding of his constitutional right to proceed by Indictment and the voluntariness of his Consent to Proceed by Information and of his Waiver of his right to proceed by Indictment. Defendant then verbally acknowledged his understanding and Defendant, under oath, acknowledged his voluntary waiver of his right to proceed by Indictment and his agreement to voluntarily proceed by Information. Defendant and his counsel executed a written Waiver of Indictment. Thereupon, the

undersigned Magistrate Judge received and **ORDERED** the Waiver of Indictment and the Information filed and made a part of the record herein.

The undersigned reviewed with Defendant the One-Count Information, including the elements the United States would have to prove at trial, charging him with possession with intent to distribute cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). The undersigned reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in the One-Count Information, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty on that charge, as was reviewed with him at the beginning of the hearing. He also stated he understood the District Judge would calculate his guideline sentence, determine if that sentence was fair and reasonable, and was within the statutory maximum.

The Court then inquired of Defendant regarding his understanding of his waiver of appellate rights as contained in the written plea agreement, as follows:

Ct: Did you and Mr. Radman discuss that, under Title 18, United States Code, Section 3742, you have a right to appeal your conviction and any sentence to the Fourth Circuit Court of Appeals provided you give notice in writing within 14 days of the District Judge's , of your intent to appeal?

Def: Yes, your Honor.

Ct: Did you and Mr. Radman discuss that 28 USC section 2255, you may collaterally attack or challenge your sentence and how that sentence is being carried out by the Bureau of Prisons?

Def: Yes, your Honor.

Ct: That collateral attack is commonly what we call a habeas corpus-type petition. Did you understand that?

Def: Yes, your Honor.

Ct: Now, under your written plea agreement, and I want you to turn, if you would please, to paragraph 11, if the district Judge's sentence is equal to or less than a guideline sentence which has a base offense level of 22 or lower, then under your agreement, you give up your right to directly appeal to the Fourth Circuit, and you give up most of your right to collaterally attack or challenge that sentence. Did you understand that?

Def: Yes, your Honor.

Ct: Is that what you intended to do by signing the agreement with paragraph 11 in it

Def: Yes, your Honor.

Ct: Did you completely understand paragraph 11 when you signed it on May the first of this year?

Def: Yes, your Honor.

Ct: And did you understand that paragraph 11 is written with the sentencing guidelines in mind, because base offense level is a guideline term?

Def: Yes, your Honor.

Ct: And that is the base offense level of 22 before there are any adjustments up or down according to the guidelines?

Def: Yes, Your Honor.

Ct: Finally, do you understand, as you've already told me, that the Judge doesn't have to apply the guideline sentence as the actual sentence?

Def: Yes, your Honor.

Ct;   Has anything about your understanding of paragraph 11 changed between when you signed the agreement on May 1st and now?

Def:  No, no, your Honor.

Ct:   Do you have a question, sir?

Def:  Yes, sir.

Ct:   If so . . . .

Def:  Yes, you said as far as going above, the Judge would have to go within the guideline but she could go above?

Ct:   She can go above the guideline sentence, but she cannot go above the statutory sentence.

Def:  The statutory sentence is 20 years.

Ct:   Yes, sir.

Def:  She can go above the guideline sentence.

Ct:   Yes.

Def:  Yes, all right.

Ct:   Let me make it easy. Seen this chart before? (Holding up sentencing guideline chart)

Def:  Yes, high end and low end.

Ct:   And, I don't know what criminal history you . . .

Def:  Six.

Ct:   Ok, let's assume a 6. I don't know that, but let's assume that. You've told me that. I'll buy into that. And let's assume that your waiver, under paragraph 11, is a guideline base offense level 21 before adjustment. Correct? 22? 22 before adjustment. So going across this chart at a level 6 would give you a range of 84 months at the low end of the guideline to 105 months at the high end of the guideline. Do you understand that?

Def:   So 22, minus acceptance of responsibility would put me at 19. Is that what you're saying?

Ct:    Uh, yes sir. So that if you were at 19, and I'm just doing this as an example, would put you at 63, a little more than 5 years, 5 years and 3 months at the low end, and 78, which is 6 years and 4 months – 6 months– 6 and a half year.

Def:   Yes, yes, sir, I understand that.

Ct:    Alright now, your maximum statutory is not more than 20 years. So the Judge can't go above that. But she can go above the low end of the guideline, and she can, if she has cause, go above the high end of the guideline, I'm not saying she will, just saying she can if she has cause. You understand that?

Def:   Yes, sir.

Ct:    And that's what Mr. Radman explained to you, in explaining the guidelines?

Def:   Yes, sir.

Upon consideration of all which, the Court finds Defendant understood his appellate rights and knowingly and voluntarily waived those rights pursuant to the plea agreement.

The Court inquired whether this was the only offer made to Defendant, to which both counsel replied that it was. The Court further inquired of Defendant's counsel if he only discussed this agreement with Defendant. Counsel replied that he had looked at a prior agreement, then went back to the AUSA and asked her to look again at the relevant conduct. He stated that the AUSA did go back to the task force and this agreement that is being executed today has a lower stipulation of relevant conduct. The prior one was higher, so this is a slightly better deal. Two levels lower than the first one. He did discuss the prior agreement and the current agreement with Defendant. Defendant confirmed that both agreements were discussed with him, and he agreed that the current agreement, signed on May 1, was a better agreement in that it has a lower stipulated relevant conduct than the earlier one.

Defendant thereafter stated in open court he understood and agreed with the terms of the written plea agreement as summarized by the Assistant United States Attorney during the hearing, and that it contained the whole of his agreement with the Government and no promises or representations were made to him by the Government other than those terms contained in the amended written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him on May 1, 2013, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant.

The undersigned Magistrate Judge inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in the One-Count Information, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in the One-Count Information and make a determination as to whether to accept or reject any recommendation or the stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his

guilty plea. Defendant and his counsel each acknowledged their understanding and Defendant maintained his desire to have his plea of guilty accepted.

The undersigned Magistrate Judge further cautioned and examined Defendant under oath concerning all matters mentioned in Rule 11.

Thereupon, Defendant, Nathan Scott, with the consent of his counsel, Scott Radman, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in the One-Count Information.

The Court then received the sworn testimony of West Virginia State Police Corporal John Wayne Smith, who testified he was involved in the investigation that resulted in Defendant's arrest. He testified that in late March or early April, 2013, a confidential informant ("CI") advised that someone known as "Ghost" was distributing cocaine hydrochloride in the Morgantown, West Virginia area. The CI saw "Ghost" in possession of approximately ½ kilo of cocaine in that area. Further, "Ghost" would be traveling to Ohio and then returning to the area on the 7th or 8th of April with cocaine for distribution. Police obtained a search warrant for a residence in Morgantown. They executed the search warrant on April 8, 2013. They were looking for "Ghost," who's name they believe is Reginald Scott. They at first believed Defendant was "Ghost," but later determined that he was not; however, Defendant was located in the residence seated near approximately ½ ounce of cocaine, along with some cell phones and vehicle keys. Cpl. Smit testified the quantity of cocaine was 14 grams, which could be doubled when cut, to total a quantity of 28 grams on the street. He further testified this was clearly dealer quantity.

Defendant stated he heard, understood, and did not disagree with Cpl. Smith's testimony regarding his own actions. From the testimony of Cpl. Smith, the undersigned Magistrate Judge concludes the offense charged in the One-Count Information is supported by an independent basis in fact concerning each of the essential elements of such offense.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood his right to have his charges presented in an Indictment and knowingly, freely and voluntarily elected to proceed by Information; Defendant understood the charges against him; Defendant understood the consequences of his plea of guilty, including the statutory maximum sentence; Defendant made a knowing and voluntary plea of guilty to the One-Count Information; and Defendant's plea is independently supported by the testimony of Cpl. Smith, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained in the One-Count Information and recommends he be adjudged guilty on said charge as contained in the One-Count Information and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is remanded to the custody of the United States Marshal pending further proceedings in this matter.

It is so **ORDERED**.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: May 7, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE